**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MELANIE BRUNO, et al., | : | |
| | : | |
| Plaintiffs, | : | Civ. No. 04-5084 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| BOROUGH OF SEASIDE PARK, et al., | : | |
| | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon defendant James Azambuja's motion for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The parties have fully briefed the motion, and the Court, having considered all the parties' submissions, hereby decides the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will grant Officer Azambuja's motion.

**I.      BACKGROUND**

On October 18, 2004, plaintiffs Melanie Bruno, Melissa Bruno, and Jose Roman (collectively "Plaintiffs") filed the Complaint in this action. The defendants in this case include the Borough of Seaside Park, the Borough of Seaside Park Police Department ("Police Department"), several officers of the Police Department, the Saw Mill restaurant and bar ("Saw

1

Mill"), several employees of the Saw Mill, Metropolitan Area Security, Inc., and a customer of the Saw Mill (collectively "Defendants"). (Second Am. Compl. ("SAC") ¶¶ 9-25.) On April 26, 2006, Officer Azambuja filed the present motion seeking summary judgment with respect to Plaintiffs' claims against him. The record shows the following relevant facts concerning those claims.

On November 23, 2003, at or around 1 a.m., Officer Azambuja was dispatched to the Saw Mill to investigate a report of disorderly persons. (Azambuja Dep. at 24, 34.) Upon arrival, Officer Azambuja observed a large crowd of people. (*Id.* at 35.) He also observed three or four security personnel restraining a man later identified as Mr. Deaver. (*Id.* at 36-37.) Officer Azambuja approached the crowd, and as he did so, he was approached by Plaintiffs, who complained that they had been "thrown out of the bar." (*Id.* at 40, 42.) Officer Azambuja recognized Melissa Bruno as a colleague from a previous job, but did not recognize the other Plaintiffs. (*Id.* at 41-42.)

After placing Mr. Deaver in handcuffs, Officer Azambuja became concerned by the crowd's aggressive behavior towards him and called for police assistance. (*Id.* at 44, 46.) Officer Azambuja then walked to his car, and as he did so, Plaintiffs complained to him that Mr. Deaver should not have been handcuffed and that they should not have been thrown out of the bar. (*See id.* at 50-51.) Plaintiffs were physically impeding Officer Azambuja from reaching his car, although they did not touch him. (*Id.* at 50-53.)

At or around this time, Mr. Roman approached Officer Azambuja and repeated that Plaintiffs were thrown out of the bar for no reason. (*Id.* at 53.) Officer Azambuja addressed Melissa Bruno and asked her to step aside. (*Id.*) Officer Azambuja also told Mr. Roman to step

aside, which Mr. Roman failed to do.  (*Id.* at 55-56.)  Officer Azambuja addressed Melissa Bruno

again and told her to "take [her] friends and leave."  (*Id.* at 56.)  Plaintiffs did not follow Officer

Azambuja's repeated instructions to step aside and to leave.  (*Id.* at 56-59; Roman Dep. at 87-89;

Melanie Bruno Dep. at 29-30.)

Officer Azambuja subsequently instructed Mr. Roman to put his hands on the police car,

and Mr. Roman followed those instructions.  (Azambuja Dep. at 59-62.)  Mr. Roman complained

again that he was thrown out of the bar for no reason.  (*Id.* at 61-62.)  As he complained, Mr.

Roman "turned around completely" and removed his hands from the car.  (*Id.* at 62.)  At around

the same time, Melissa Bruno and Melanie Bruno began complaining to Officer Azambuja again.

(*Id.* at 63.)

Officer Azambuja instructed Mr. Roman again to place his hands on the police car, which

Mr. Roman did.  (*Id.* at 64.)  Officer Azambuja did not instruct Melissa and Melanie Bruno to do

the same, however, because they were "staying back" and did not approach him as Mr. Roman

did.  (*Id.* at 67.)  Once again, Mr. Roman lifted his hands off of the police car, turning around and

attempting to explain to Officer Azambuja that he "didn't do anything."  (*Id.* at 68.)  At that

point, Officer Azambuja told Mr. Roman to put his hands behind his back and that he was under

arrest.  (*Id.*)  Mr. Roman initially did not place his hands behind his back, and instead placed his

hands back on the police car.  (*Id.* at 69.)  Officer Azambuja reached for Mr. Roman's arms and

placed them behind Mr. Roman's back.  (*Id.* at 69-71.)  Mr. Roman's claim against Officer

Azambuja is not based on the physical contact that occurred during the course of that arrest.

(Roman Dep. at 47-48, 91.)

At approximately the same time, other police officers arrived to the scene, including

3

Officers Boag and Citta.  (Azambuja Dep. at 71, 73.)  Officer Azambuja handcuffed Mr. Roman

using handcuffs that Officer Boag gave to him at that time.  (*Id.* at 71.)  Officer Azambuja then

walked with Mr. Roman to a police car that the other officers arrived in and, with the assistance

of another officer, placed Mr. Roman in that car.  (*Id.* at 74-75.)  He later placed Mr. Deaver in

the same car.  (*Id.* at 76.)  Melissa and Melanie Bruno were arrested at approximately the same

time.  (*See id.* at 77-78.)  Officer Azambuja did not participate in their arrests.  (*Id.*)

      According to Officer Azambuja, he subsequently talked with witnesses and gathered

information for a police report that he planned to write.  (*Id.* at 77, 80-81.)  He then compiled his

notes and continued to patrol the streets.  (*Id.* at 82-83.)  According to Officer Azambuja, he did

not return to the police station because he was instructed to continue patrolling the streets.  (*Id.* at

80.)  In contrast, Mr. Roman has testified that it was Officer Azambuja who drove him and Mr.

Deaver to the police station.  (Roman Dep. at 50.)  Mr. Roman does not, however, claim that

Officer Azambuja engaged in any unlawful conduct during the car ride to the police station or

while at the police station.  (*Id.* at 51, 91-92.)

      Later in the evening, Officer Azambuja was instructed to escort certain individuals,

including Melanie Bruno, who remained under arrest at the time, to a hospital in an ambulance.

(Azambuja Dep. at 83-85.)  Officer Azambuja stayed at the hospital for between two and four

hours that night while waiting for Melanie Bruno to be treated.  (*Id.* at 88.)  Mr. Roman and

Melissa Bruno were also present at the hospital waiting for Melanie Bruno.  (*Id.* at 89.)  While

there, Mr. Roman showed Officer Azambuja a complaint that was written against him and asked

what it meant.  (*Id.* 91.)  Officer Azambuja told Mr. Roman and Melissa Bruno that they were

being charged, and that he was unable to provide any legal advice concerning the charges.  (*Id.* at

91-92.)  After Melanie Bruno finished receiving medical treatment, Officer Azambuja drove her back to the police station.  (*Id.* at 103.)  Mr. Roman had requested that Officer Azambuja also drive him to police station so that he could remain with Melanie Bruno, but Officer Azambuja refused to do so.  (*Id.* at 104-05.)  Melanie Bruno was discharged after she returned to the station.  (*Id.* at 105.)

Officer Azambuja presently seeks summary judgment with respect to Plaintiffs' claims that he used excessive force and that he engaged in malicious abuse of process.  (Br. at 11-19.)  The parties have completed briefing the motion, and the Court will now address the present motion.

## II.      DISCUSSION

Plaintiffs assert several federal and state law claims against Officer Azambuja, including: (1) constitutional violations through use of excessive force (Counts I-III); (2) malicious abuse of process (Counts V-VII); (3) malicious prosecution (Counts VIII-X); (4) assault (Count XI); (5) battery (Count XI); (6) false arrest (Count XI); and (7) false imprisonment (Count XI).  In his brief, Officer Azambuja addresses only the claims concerning his alleged use of excessive force and alleged malicious abuse of process.  The Court will therefore consider the present motion with respect to those claims only.

### A.      Standard of Review for Motion for Summary Judgment

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.    Plaintiffs' Claim That Officer Azambuja Used Excessive Force

#### 1.    Requirements for Claims of Excessive Force

Plaintiffs assert their excessive force claim against Officer Azambuja pursuant to 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Thus, section 1983 provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir.

2004).

"[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard  . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "[T]he 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Kopec*, 361 F.3d at 776-77.  "A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* at 777.

## 2.    Plaintiffs' Claim Against Officer Azambuja

Officer Azambuja argues that he is entitled to summary judgment with respect to Plaintiffs' claim that he used excessive force during their arrests.  He argues that the only physical contact at issue between himself and Plaintiffs occurred during his arrest of Mr. Roman, and that Mr. Roman has testified that Officer Azambuja did not use excessive force during that arrest.  (Br. at 8.)  In opposing Officer Azambuja's motion, Plaintiffs state that they have retained

7

an expert who will give an opinion about the reasonableness of any force used by Defendants during Plaintiffs' arrests.  (Opp. Br. at 6-8.)  Plaintiffs argue that summary judgment is inappropriate at this time because their expert has not yet given his opinion.  (*Id.*)

Plaintiffs' argument is unpersuasive.  Despite Plaintiffs' planned use of an expert opinion to prove that Defendants' use of force was unreasonable, Plaintiffs must oppose the present motion for summary judgment by identifying the facts upon which they and the expert would rely in proving their claim. Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial").  Here, they have set forth no such facts.

The undisputed record shows instead that Officer Azambuja did not use excessive force with respect to any of the Plaintiffs.  Officer Azambuja did not participate in the arrests of Melissa Bruno and Melanie Bruno.  (*See* Azambuja Dep. at 77.)  In addition, Officer Azambuja did not make physical contact with either Melissa Bruno or Melanie Bruno during the course of the relevant events.  (Melissa Bruno Dep. at 43; Melanie Bruno Dep. at 77.)  Although Plaintiffs allege that Officer Azambuja drove erratically while returning Melanie Bruno from the hospital to the police station, and that he thereby caused discomfort to her shoulder injury, there is no evidence that any erratic driving by Officer Azambuja was unreasonable or caused injury to her. (*See* Melanie Bruno Dep. at 88-90.)

The only force that Officer Azambuja used on any of the Plaintiffs occurred with respect to Mr. Roman during his arrest.  Mr. Roman has testified, however, that Officer Azambuja used no force during that arrest.  (Roman Dep. at 47-48.)

Based on this record, and drawing all reasonable inferences in Plaintiffs' favor, there is no genuine dispute concerning whether Officer Azambuja used excessive force with respect to Plaintiffs.  The evidence shows that he did not, and summary judgment on this claim is therefore appropriate.

### C.    Plaintiffs' Claim That Officer Azambuja Engaged In Malicious Abuse of Process

#### 1.    Requirements for Claims of Malicious Abuse of Process

Plaintiffs also claim that Officer Azambuja engaged in malicious abuse of process by making false statements that were used in what they allege were groundless criminal prosecutions against them.  (SAC ¶¶ 62-79.)

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)).  "Under New Jersey law, the elements of a malicious abuse of process claim are (1) an 'ulterior motive' for the use of process and (2) 'some further act after an issuance of process representing the perversion of the legitimate use of the process.'" *Securimetrics, Inc. v. Iridian Techs., Inc.*, 2005 WL 1140689, at *5 (D.N.J. May 13, 2005) (quoting *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 157 (Law Div. 1992), *aff'd*, 273 N.J. Super. 526 (App. Div.), *cert. denied*, 138 N.J. 264 (1994), *cert. denied*, 516 U.S. 847 (1995)).

## 2.    Plaintiffs' Claim Against Officer Azambuja

Here, Plaintiffs have failed to set forth facts showing that Officer Azambuja engaged in any illegitimate conduct relating to Plaintiffs' criminal prosecutions.  The record shows that, during the relevant times, Officer Azambuja attempted to maintain order at the Saw Mill, and that in the course of doing so, he arrested Mr. Roman for his repeated refusal to follow orders. (Azambuja Dep. at 61-68; Roman Dep. at 87-91.)  After that arrest, Officer Azambuja's only other relevant involvement with Plaintiffs occurred while escorting Melanie Bruno during her visit to the hospital.  (*See* Azambuja Dep. at 83-85, 88-89; Roman Dep. 91-92.)  By that time, Mr. Roman and Melissa Bruno had already received complaints against them, prepared by police officers other than Officer Azambuja.  (Azambuja Dep. at 91; Roman Dep. 92-93; Melissa Bruno Dep. at 36.)  Melanie Bruno received the complaint against her from another police officer upon her return to the police station.  (Melanie Bruno at 39.)  Plaintiffs have not identified any evidence showing that Officer Azambuja was involved with their criminal prosecutions in any other manner.  Viewing these uncontested facts and drawing all reasonable inferences in favor of Plaintiffs, there is no genuine dispute that Officer Azambuja's limited conduct with respect to Plaintiffs' criminal prosecutions was for legitimate purposes, and that any unlawful conduct that may have occurred did not concern Officer Azambuja.  Summary judgment in favor of Officer Azambuja with respect to this claim is therefore appropriate.

10

**III.    CONCLUSION**

For these reasons, Officer Azambuja's motion for summary judgment is granted.  An appropriate form of order is filed herewith.


Dated:   September 7, 2006

   s/ Garrett E. Brown, Jr.     
GARRETT E. BROWN, JR., U.S.D.J.
